STATE, Respondent, v. DRIED MILK PRODUCTS CO-OPERA-TIVE (Dairy Maid Products, Inc.), Appellant.

*March 9—April 3, 1962.*

358

For the appellant there was a brief by *Rogers & Owens* of Portage, and oral argument by *Phillip Owens*.

For the respondent the cause was argued by *William A. Platz,* assistant attorney general, and *David H. Bennett,* district attorney of Columbia county, with whom on the brief was *John W. Reynolds,* attorney general.

HALLOWS, J. In this case, the owner of the vehicle, who was also the employer of its driver, was found guilty of the violation of sec. 348.15 (2) (c), Stats., which provides, in part, no person shall operate any vehicle or combination of vehicles on a Class "A" highway which does not comply with certain weight limitations. This section is part of a welfare statute which generally creates a crime *malum prohibitum* for the doing of an act without requirement of intent. Two other sections, namely, secs. 348.02 (3) [1] and 348.20 (1),[2] must be considered in arriving at a construction of the statutory language.

The appellant contends that although sec. 348.15 (2), Stats., provides absolute liability on the operator or driver of the vehicle, the legislature did not intend and these sections of the statutes cannot be construed to impose such vicarious liability upon the owner of the truck. More specifically, the appellant argues an owner cannot be found guilty of violating the weight limitations applicable to its tractor-trailer truck unless it is proven the owner or employer knowingly caused or required or permitted the operation of the vehicle in violation of the statute. Prior to 1959, the word "knowingly" was a requirement in sec. 348.20 (1) on the part of the owner or the employer so far as permitting the operation of a vehicle upon a highway

---

[1] "348.02 APPLICABILITY OF CHAPTER.

"(3) Any owner of a vehicle who causes or permits such vehicle to be operated on a highway in violation of this chapter is guilty of the violation the same as if he had actually operated the vehicle himself."

[2] "348.20 POLICY IN PROSECUTING WEIGHT VIOLATIONS. (1) It is declared to be the public policy of the state that prosecutions for overweight violations shall in every instance where practicable be instituted against the person holding the authority, certificates, licenses, or permits evidencing operating privileges from the public service commission or motor vehicle department which may be the proper object of cancellation or revocation proceedings. In instances where a combination of tractor and trailer or semitrailer is used, the person standing in the relationship of principal or em-

contrary to the weight restrictions. But by ch. 156, Laws of 1959, the word "knowingly" was removed from that section. An analysis of the sections involved leads to the conclusion sec. 348.02 (3), which is a general section applying to ch. 348, Stats., modifies sec. 348.15 (2). Reading the two sections together, sec. 348.02 (3) enlarges the definition of the word "operate" in sec. 348.15 (2), so that an owner of a vehicle who causes or permits a vehicle to be operated on a highway is guilty of a violation of the chapter the same as though the owner had been the driver of the vehicle. We do not believe it is a fair construction of sec. 348.02 (3), as contended by the appellant, to say the language of this section requires the owner to have knowledge of the violation and, having that knowledge, causes or permits his vehicle to be operated on the highway.

Moreover, by sec. 348.20 (1), Stats., which sets forth the policy in prosecuting weight violations, both the owner and the employer of the driver of the tractor portion of a vehicle combination are liable for weight violations. The appellant would read back into this section the word "knowingly" by necessary implication founded upon general common-law rules that criminal violations require an intent and that criminal laws are to be strictly construed. In view of the legislative history [3] of this section, such construction is

ployer to the driver of the tractor portion of the vehicle combination is liable for violation of secs. 348.15 to 348.17 along with the owner holding authority, certificates, licenses, or permits from the state. It is a violation of secs. 348.15 to 348.17 for the owner or any other person employing or otherwise directing the operator of the vehicle to require or permit the operation of such vehicle upon a highway contrary to secs. 348.12 to 348.17. This section shall not apply to individuals, copartnership, or corporations whose principal business is leasing of vehicles including trailers and semi-trailers as described in sec. 194.44, but such prosecutions shall be instituted against the lessee of the vehicle."

[3] See Letter of Transmittal of the Highway Advisory Committee, 1950 Report, referring to sec. 348.20 (1), Stats., which became law by ch. 436, Laws of 1951.

not now permissible.[4] Keeping in mind that welfare statutes are *mala prohibita* and an exception to the general common-law rule that an intent of some blameworthiness is required, we must construe the statute in the light of the legislative history when the legislative intent is appropriately expressed in statutory language and such construction can be given without violence to the rule that criminal laws are to be strictly construed against the government.

Without such an amendment and legislative history, we would be faced with only the words of the statutes, which are primary evidence of legislative intent, and give rise to the question of whether the absence of verbs or modifiers clearly denoting a required state of mind may be taken as a sufficient basis upon which to infer legislative intention to create criminal liability without specific intent. The words of the sections, "cause," "require," "permit," while inherently carrying the requirement of some awareness, do not in the sections involved, imply more than an awareness of the vehicle operating on the highways pursuant to the licenses and within the scope of the owner's or employer's business. If the vehicle had been stolen and driven by a thief, no liability would have attached to the defendant. But a corporation acts of necessity through its agents whose acts within the scope of the agent's authority are the acts of the corporation, both for the imposition of civil and criminal liability. *Vulcan Last Co. v. State* (1928), 194 Wis. 636, 217 N. W. 412.

Appellant also contends it is not a party to the crime under sec. 939.05 of the Criminal Code. This section has no application to ch. 348, sec. 348.15 (2), Stats., because the latter section is a specific statute creating a specific crime and defining those persons within its contemplation and is not controlled by the general sec. 939.05.

---

[4] For a discussion of the problem of liability without fault in Wisconsin's criminal statutes, see 1956 *Wisconsin Law Review,* 625.

The appellant further contends the construction of absolute criminal liability upon the owner and employer, who has no actual knowledge of the violation is unconstitutional. We do not agree. There are many instances in which this court has sustained the truck-weight law against constitutional attack. *State v. Naczas* (1959), 8 Wis. (2d) 187, 98 N. W. (2d) 444; *State v. Seraphine* (1954), 266 Wis. 118, 62 N. W. (2d) 403; *State v. Stang Tank Line* (1953), 264 Wis. 570, 59 N. W. (2d) 800. The appellant relies, for its proposition, on *People v. Vadakin* (1953), 204 Misc. 904, 125 N. Y. Supp. (2d) 25, but the contrary view upholding the constitutionality of the weight statute was held in *People v. Rodenbach* (1953), 204 Misc. 905, 126 N. Y. Supp. (2d) 295, wherein the court stated the reasoning of *Vadakin* was persuasive but not binding upon it. The *Rodenbach Case* was affirmed by the New York court of appeals *(People v. Rodenbach* (1954), 307 N. Y. 614, 120 N. E. (2d) 826), and the view again upheld in *People v. Macomb* (1958), 9 Misc. (2d) 1027, 174 N. Y. Supp. (2d) 330.

Statutes of this nature, imposing criminal penalty irrespective of any intent to violate them, have for their purpose the requirement of a degree of diligence for the protection of the public which shall render a violation thereof impossible. *People v. Roby* (1884), 52 Mich. 577, 18 N. W. 365; *Reismier v. State* (1912), 148 Wis. 593, 135 N. W. 153; *Scott v. State* (1920), 171 Wis. 487, 177 N. W. 615; *Knecht v. Kenyon* (1923), 179 Wis. 523, 192 N. W. 82; *Commonwealth v. Ober* (1934), 286 Mass. 25, 189 N. E. 601. The statutes here involved are designed to prevent illegal overloading which causes premature deterioration of public highways. Under its police power, the state may subject the use of highways to reasonable regulations and the weight restrictions. These statutes are examples of situations where a person must at his peril see to it that the

regulations are not violated by his acts or by the acts of another acting in his behalf. See *State v. Hartfiel* (1869), 24 Wis. 60; *State ex rel. Conlin v. Wausau* (1908), 137 Wis. 311, 118 N. W. 810; *State v. Grams* (1942), 241 Wis. 493, 6 N. W. (2d) 191.

Where legislative action is within the scope of the police power, fairly debatable questions as to reasonableness, wisdom, and propriety of action, are not for the determination of the court but for the legislative body. *State v. Ross* (1951), 259 Wis. 379, 48 N. W. (2d) 460; *State v. United Parking Stations* (1951), 235 Minn. 147, 50 N. W. (2d) 50; *Commonwealth v. Flickinger* (1949), 165 Pa. Super. 95, 67 Atl. (2d) 779; *Jones v. Chicago* (1952), 348 Ill. App. 310, 108 N. E. (2d) 802; *People v. Breen* (1950), 326 Mich. 720, 40 N. W. (2d) 778. Certain tolerances of weight are permitted by the statutes, but in this case the vehicle greatly exceeded them. It is unfortunate no private scale was available, but state scales out of town on public highways are not for the accommodation of truckers but to catch violators. The wisdom and propriety of the weight statutes and their application cannot be doubted, much less debated here.

*By the Court.*—Judgment affirmed.